**LAW OFFICE OF JERRY L. STEERING**
Jerry L. Steering (SBN 122509)
Brenton Whitney Aitken Hands (SBN 308601)
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerry@steeringlaw.com; jerrysteering@yahoo.com
brentonaitken@gmail.com
Attorneys for plaintiffs Judson Richard Ball, Aurora Ibay Ball, Judson Enrique Ball, Jacob Alessandro Ball and Jordin Howard Ball

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDSON RICHARD BALL, AURORA IBAY BALL, JUDSON ENRIQUE BALL, JACOB ALESSANDRO BALL and JORDIN HOWARD BALL<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY OF WHITTIER and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) CLAIM FOR UNREASONABLE SEIZURE OF PERSON (U.S. CONST. AMEND 4); CLAIM FOR EXCESSIVE / UNREASONABLE USE OF FORCE (U.S. CONST. AMEND 4); CLAIM FOR UNLAWFUL ENTRY INTO, SEARCH AND SEIZURE OF PRIVATE RESIDENCE (U.S. CONST. CONST. AMEND 4); CLAIM FOR UNREASONABLE SEIZURE OF PROPERTY (U.S. CONST. AMEND 4); CLAIM FOR RIGHT TO FREEDOM OF SPEECH / RIGHT TO PETITION GOVERNMENT FOR REDRESS (U.S. CONST. AMEND 1); MONELL / MUNICIPAL LIABLITY and CALIFORNIA STATE LAW |

CLAIMS FOR VIOLATION OF CAL. CIVIL CODE § 52.1 [BANE ACT]; FALSE ARREST / FALSE IMPRISONMENT; BATTERY; ASSAULT; CONVERSION / TRESPASS TO CHATTELS; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**COME NOW** plaintiffs Judson Richard Ball, Aurora Ibay Ball, Judson Enrigue Ball, Jacob Alessandro Ball and Jordin Howard Ball and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the County of Los Angles, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.      As plaintiffs' claims brought under California state law arise out of the same transactions and occurrences and out of a common nucleus of operative facts as the plaintiff's federal questions claims, this court has jurisdiction over the plaintiffs' California state law claims under its Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

4.      Plaintiffs timely filed their Claim for Damages against the City of Whittier on July 16, 2024, pursuant to the California Tort Claims Act, Cal. Gov't. Code § 900 et seq., and said claim was rejected by defendant City of Whittier on January 28, 2025, less than six months prior to the filing of this instant action.

## GENERAL ALLEGATIONS

5.      Plaintiff Judson Richard Ball, hereinafter referred to as "JUDSON BALL" and/or "plaintiff" and/or "JUDSON" and/or "plaintiff JUDSON" is a natural person, who, at all times complained of in this action, resided in the County of Los Angeles, State of California.

6.      Plaintiff Aurora Ibay Ball, hereinafter referred to as "AURORA BALL" and/or "plaintiff" and/or "AURORA" and/or "plaintiff AURORA" is a natural person, who, at all times complained of in this action, resided in the County of Los Angeles, State of California.

7.      Plaintiff Judson Enrique Ball, hereinafter referred to as "ENRIQUE BALL" and/or "plaintiff" and/or "ENRIQUE" and/or "plaintiff ENRIQUE" is a natural person, who, at all times complained of in this action, resided in the County of Los Angeles, State of California.

8.      Plaintiff Jacob Alessandro Ball, hereinafter referred to as "JACOB BALL" and/or "plaintiff" and/or "JACOB" and/or "plaintiff JACOB" is a natural person, who, at all times complained of in this action, resided in the County of Los Angeles, State of California.

9.      Plaintiff Jordin Howard Ball, hereinafter referred to as "JORDIN BALL" and/or "plaintiff" and/or "JORDIN" and/or "plaintiff JORDIN" is a natural person, who, at all times complained of in this action, resided in the County of Los Angeles, State of California.

10.      Defendant City of Whittier, hereinafter also referred to as "City of Whittier" and/or "CITY" and/or "defendant CITY", is a political subdivision of the State of California and is a municipal entity, located within the territorial jurisdiction of this Honorable Court.

11.      Defendants DOES 1 through 7, inclusive, are California Certified Peace Officers and sworn peace officers and police officers and/or supervisors and/or investigators and/or Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant City of Whittier

and/or with some other public entity, who in some way committed some or all of the tortious actions and constitutional violations complained of in this action, and/or are otherwise responsible for and liable to plaintiffs for the acts complained of in this action, whose identities are, and remain unknown to plaintiffs, who will amend their complaint to add and to show the actual names of said DOE defendants when their identities are ascertained by plaintiffs.[1]

12.     At all times complained of herein, DOES 1 through 7, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and police officers and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers and/or other public officers, employed by defendant City of Whittier and/or with some other public entity, and were acting in the course of and within the scope of their employment with defendant City of Whittier.

13.     Defendants DOES 8 through 10, inclusive, are the Whittier City Manager and/or sworn peace officers and/or Supervisory Officials such as the Chief of Police and/or Assistant Chiefs and/or Deputy Chiefs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by the City of Whittier and/or with some other public entity, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiffs in this action, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers) via bystander liability (failing to intervene in and stop

_____

[1] Plaintiffs made a request under the California Public Records Act to ascertain the identities of DOES 1 through 10, inclusive, but never received a response from defendant City of Whittier or the Whittier Police Department.

unlawful actions of their subordinates and/or other officers) such as creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the City of Whittier and/or some other public entity and such as the failure to train Whittier Police Department police officers that they have no right to: (1) come onto private property and shoot a family's dog to death; (2) unlawfully point high-powered assault rifles, shotguns and pistols at unarmed civilians in the absence of any suspicion whatsoever of any crimes or criminality afoot of said persons for serious violent felonies, and to order them to lie prone on their driveway[2]; (3) falsely arrest persons for "resistance offenses" when no such "resistance offenses" have been committed; (4) unlawfully use excessive force on persons without any justification and sending them to the hospital with substantial injuries, including pointing firearms are persons, threatening the use of deadly force upon them; (5) unlawfully search and ransack private residences, without consent, a warrant or any exigency or emergency, (6) interfering with persons' and/or otherwise violate persons' constitutionally protected right to free speech, and (7) shooting persons' dogs in the absence of a reasonable belief that such persons' dog pose an imminent threat of the dog seriously injuring them, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained of by plaintiffs herein.

14.    Plaintiffs are presently unaware of the identities of DOES 1 through 10, inclusive, and will amend their complaint to add and to show the actual names of said DOE defendants, when so ascertained by plaintiffs.

15.    At all times complained of herein, defendants DOES 8 through 10, inclusive, were acting were acting as individual persons acting under the color of

---

[2] Or otherwise in a prone position on the ground or driveway or floor.

state law, pursuant to their authority as the Whittier[3] City Manager(s), the Chief of Police and/or the Assistant Chief of Police and/or Deputy Chiefs of Police and/or other Supervisors and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by the City of Whittier[4] and/or some other public official(s) with the City of Whittier[5] and were acting in the course of and within the scope of their employment with defendant the City of Whittier[6].

16. Moreover, at all times complained of herein, defendants DOES 1 through 7, inclusive, were acting pursuant to the customs, policies, usages and practices of the Whittier Police Department / City of Whittier[7]: 1) for coming onto private property and shoot a family's dog to death; (2) for unlawfully pointing high-powered assault rifles, shotguns and pistols at unarmed civilians in the absence of any suspicion whatsoever of any crimes or criminality afoot of said persons and order them to lie prone on their driveway; (3) for falsely arresting persons; (4) for unlawfully using excessive force on persons without any justification and sending them to the hospital with substantial injuries; and (5) for unlawfully searching and ransacking private residences, without consent, a warrant or any exigency or emergency, and (6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiffs in this action.

---

[3] And/or some other municipal entity.
[4] Or with some other public entity
[5] Or with some other public entity
[6] Or with some other public entity.
[7] Or with some other public entity

17.     In addition to the above and foregoing, defendants DOES 1 through 7, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN of their federal Constitutional and statutory rights, and their rights under California state law, as complained of below in this action, and acted in joint and concerted action to so deprive plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN of those rights as complained of herein; all in violation of 42 U.S.C. § 1983 and otherwise in violation of United States and California constitutional and statutory law.

18.     Said conspiracy/agreement/understanding/plan/scheme/joint action / concerted action, above referenced, was a proximate cause of the violation of the plaintiffs JUDSON's, AURORA's, ENRIQUE's, JACOB's and JORDIN's federal and state constitutional and statutory rights, as complained of herein.

### FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
**Violation of Fourth Amendment Rights**
**Unlawful/Unreasonable Seizure of Person**
**(By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants DOES 1 through 7, inclusive)**

19.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 18, inclusive, above, as if set forth in full herein.

20.     On January 16, 2024, at approximately 2:45 p.m., plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN heard several gunshots outside of their home from the front driveway area of their single-family residence at 8150 College Boulevard in Whittier, California.

21.     In response to hearing those gunshots, plaintiff JUDSON ran towards

his driveway from his side yard and he saw a man in a jumpsuit[8], defendant DOE 1, holding a handgun, and the Ball family dog[9] laying on the ground.

22.    Plaintiff JUDSON then knelt down next to the Ball family dog, "Khaleesi", hereinafter referred to as "KHALEESI", who was bleeding and had a large gunshot wound to her chest. At that point, plaintiff JUDSON believed that KHALEESI was going to die as she was bleeding out badly.

23.    Plaintiff AURORA was exiting her residence[10] from a side door when she heard the gunshots and actually saw defendant DOE 1 discharge the last round from his pistol at KHALEESI, witnessing her dog being shot. She then went to her husband JUDSON who was by then kneeling down next to KHALEESI.

24.    By this point in time plaintiffs ENRIQUE, JACOB and JORDIN also came out of the Ball family home[11] and verbally protested defendant DOE 1's for shooting of KHALEESI.

25.    Within the next few minutes, approximately 15 Whittier Police Department police officers, defendant DOES 2 through 7, inclusive[12], arrived at the Ball family home, and ordered plaintiffs JUDSON, AURORA, ENRIQUE,

---

[8] Plaintiff JUDSON was unable to determine whether that man was a Whittier Police Department police officer because he was not in a regular type police officer uniform. It was only until DOE 1 radioed for backup police officers that JUDSON had a suspicion that the man, DOE 1, was a Whittier Police Department police officer. Initially, plaintiff JUDSON thought he was a gang member.

[9] An American Doberman Pinscher named "Khaleesi."

[10] The Ball family home, the single family residence at 8150 College Boulevard in Whittier, California.

[11] The Ball family home, the single family residence at 8150 College Boulevard in Whittier, California.

[12] Although there were approximately 15 Whittier Police Department police officers who arrived the scene at plaintiff's home, the Local Rules of the United States District Court for the Central District of California only permits a Complaint for Damages to show a maximum of 10 DOE defendants in the case caption.

JACOB and JORDIN at gunpoint with assault rifles, shot guns and handguns, to get on the ground, without any legal or moral justification or any reasonable suspicion of criminality afoot by those plaintiffs.

26.    Plaintiff JUDSON was then thrown to the ground by two Whittier Police Department police officers who arrived, defendants DOE 2 and DOE 3, with great and excessive force, injuring both of his knees, both of his shoulders, and his neck and back.

27.    Thereafter, plaintiff JUDSON was handcuffed for approximately 20 minutes, in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification, further injuring one of his shoulders that had just been operated on. The handcuffs were cinched down excessively tight, in a showing of great and excessive force, causing pain and injuries to plaintiff JUDSON's wrists.

28.    Thereafter, plaintiff JUDSON was unable to get into a Whittier Police Department patrol car due to his injuries.

29.    After being looked at in the ambulance that had arrived by the ambulance attendants[13], plaintiff JUDSON decided that he would take himself to the emergency room at Presbyterian Intercommunity Hospital in Whittier, California for treatment for his injuries[14].

30.    Plaintiff AURORA was also ordered at gunpoint to get on the ground in a prone position by defendant DOE 4, where she remained face down for approximately a minute before being allowed to stand up. However she was still detained at gunpoint for several minutes thereafter by defendant DOE 4, as she watched her husband and sons, plaintiffs JUDSON, ENRIQUE, JACOB and

---

[13] EMTs and/or Paramedics and/or other mobile emergency medical personnel.
[14] It was later determined that he will need reverse shoulder replacement surgery as a result of the injuries he sustained as result of the subject incident.

JORDIN being ordered to the ground at gunpoint by Whittier Police Department police officers, and witnessed her husband and sons being handcuffed without any moral or legal justification or any reasonable suspicion of criminality afoot by any of the plaintiffs.

31.    Plaintiff AURORA was thereafter detained for approximately one hour by defendant DOE 4 standing next to her without any legal or moral justification, and in the absence of any reasonable suspicion of criminality afoot by her.

32.    Plaintiff ENRIQUE was also ordered to get on the ground at gunpoint by defendants DOES 1 through 7, inclusive, and was handcuffed by said defendants before being placed in the back seat of a Whittier Police Department patrol car for approximately 30 minutes before being released; also in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification.

33.    Moreover, the handcuffs were cinched down excessively tight by defendants DOES 1 through 6, inclusive, in a showing of great and excessive force, causing pain and injuries to plaintiff ENRIQUE's wrists.

34.    Plaintiff JACOB was also ordered to get on the ground at gunpoint by defendant DOES 1 through 6, inclusive, and was handcuffed by them before being placed in the back seat of a Whittier Police Department patrol car for approximately 15 minutes before being released, also in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification. The handcuffs were also cinched down by defendants DOES 1 through 6, inclusive, excessively tight in a showing of great and excessive force, causing pain and injuries to plaintiff JACOB's wrists.

35.    Plaintiff JORDIN was also ordered to the ground at gunpoint by defendant DOES 1 through 6, inclusive, and was handcuffed by them; also in the absence of any suspicion of a crime or criminality afoot by him, and without any

legal or moral justification, before being placed in the back seat of a Whittier Police Department patrol car for approximately 45 minutes to an hour before he started feeling an elevated heart rate due to a preexisting heart condition and pain from a shoulder sprain and requested medical attention.

36.    The handcuffs were also cinched down excessively tight on plaintiff JORDIN in a showing of great and excessive force, causing pain and injuries to plaintiff JORDIN's wrists and spraining his shoulder.

37.    Thereafter, plaintiff JORDIN was handcuffed (both left and rights wrists) to a gurney in the back of an ambulance and was transported to the Emergency Room at Presbyterian Intercommunity Hospital in Whittier, California where he was denied admission to said hospital.

38.    Thereafter, plaintiff JORDIN was transported by ambulance to the Emergency Room at Whittier Hospital Medical Center in Whittier, California, still in police custody, where he remained handcuffed to a gurney for another approximately 30-45 minutes before being sat up in a chair with his hands handcuffed behind him in agonizing pain and suffering for approximately five and half to six hours.

39.    During the course of his admission to the Emergency Room at Whittier Hospital Medical Center, defendant DOE 5, a female Whittier Police Department police officer refused medical staff's requests to remove the handcuffs from plaintiff JORDIN so that his shoulder could be X-rayed.

40.    Thus, plaintiff JORDIN was X-rayed in handcuffs in agonizing pain and suffering.

41.    Thereafter, plaintiff JORDIN was then released from police custody and from the hospital when his family[15] arrived to pick him up.

---

[15] The other plaintiffs in this case.

42.    None of the involved Whittier Police Department police officers[16] had either reasonable suspicion of criminality afoot of any of the plaintiffs, or probable cause to believe that any of the members of the Ball family committed a crime.

43.    Moreover, throughout the course of the subject incidents complained of in this action, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN verbally protested to defendants DOES 1 through 7, inclusive: 1) the unlawful and unjustified shooting and killing of the Ball family's dog KHALEESI, 2) the plaintiffs being ordered to get and to stay on the ground at gunpoint, 3) the excessive force used upon them in being threatened with the use of deadly force upon them via unjustifiably pointing guns at them, 4) the use of deadly force upon them via excessively tightly handcuffing them, 5) the use of deadly force upon them via battering them, 6) the use of deadly force upon them via assaulting them, 7) unlawfully seizing and falsely imprisoning them (i.e. falsely detaining and falsely arresting them) and 8) the unlawful warrantless search of the family home; all without any legal or moral justification whatsoever, as shown above and below.

44.    Said actions by Whittier Police Department police officers defendants DOES 1 through 7, inclusive, were done to the Ball family in large part, in response to and in retaliation for their verbal protests by plaintiffs to defendants DOES 1 through 7, inclusive[17], in violation of plaintiffs' right to exercise their constitutionally protected speech[18] under the First Amendment to the United States Constitution.

45.    Moreover, DOE 3 and or DOE 4 and or DOE 6 and/or DOE 7 told plaintiff AURORA they were going into the Ball family home "to make sure that

---

[16] Defendants DOES 1 through 6, inclusive.
[17] As set forth in paragraph 43, above, and otherwise.
[18] Their right to petition the government for grievances and their right to freedom of speech.

everybody was out of the house".

46.     Moreover, DOE 3 and or DOE 4 and or DOE 6 and/or DOE 7 prevented the plaintiffs from entering their home while they entered and searched plaintiffs' home.

47.     Thereafter, said DOE defendants entered and searched plaintiffs' home, without a warrant, consent or any exigency or emergency.

48.     After DOE 3 and or DOE 4 and or DOE 6 and/or DOE 7 had conducted a very thorough unlawful warrantless search of the entirety of the family home—including looking in every dresser, cupboard, closet, essentially every square inch of the house—plaintiff AURORA was then allowed back into her home.

49.     None of the involved Whittier Police Department police officers, defendants DOES 1 through 7, inclusive, had either reasonable suspicion of criminality afoot or probable cause to believe that any of the plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN had committed a crime.

50.     None of plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were taken to jail or the Whittier Police Station.

51.     None of plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were given a Citation or Notice to Appear in court, or otherwise charged with or accused of having committed a crime.

52.     Accordingly, the unlawful seizures (i.e. unlawful detentions and arrests) of plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were done in violation of their right to be free from an unlawful / unreasonable seizure of their persons under the Fourth Amendment to the United States Constitution.

53.     As a direct and proximate result of the actions of defendants DOES 1 through 7, inclusive's unlawful and unreasonable seizures of plaintiffs JUDSON,

AURORA, ENRIQUE, JACOB and JORDIN[19] they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

54.    The actions by said defendants DOES 1 through 7, inclusive, were committed maliciously, oppressively and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants, and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff against each defendant.

## SECOND CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
### Violation of Fourth Amendment Rights
### Excessive/Unreasonable Use of Force on Person
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants DOES 1 through 7, inclusive)

55.    Plaintiffs hereby reallege and re-incorporate by reference the allegations set forth in paragraphs 1 through 54, inclusive, above, as if set forth in full herein.

56.    As shown above, in less than five minutes after defendant DOE 1 shot and killed the family dog KHALEESI, approximately fifteen Whittier Police Department police officers arrived at the scene of that dog shooting in front of plaintiffs' home.

57.    Defendants DOES 1 through 7, inclusive, ordered plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN to get on the ground at gunpoint[20]

---

[19] Including their injurious handcuffing.
[20] While pointing the guns at those plaintiffs.

with their assault rifles, shot guns and handguns, without any legal or moral justification for pointing their firearms at the plaintiffs, and in the absence of any reasonable suspicion of criminality afoot by plaintiffs.

58.    Also as shown above, plaintiff JUDSON was thrown to the ground by several Whittier Police Department police officers who arrived at the scene at plaintiffs' home, defendants DOE 1 and/or DOE 2 and/or DOE 3, with great and excessive force, injuring both of his knees, both of his shoulders, and his neck and back.

59.    Also, as shown above, plaintiff JUDSON was then handcuffed for approximately 20 minutes, in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification, injuring one of his shoulders that had just been operated on.

60.    In addition, the handcuffs were cinched down excessively tightly on JUSTIN, in a showing of great and excessive force, causing pain and injuries to plaintiff JUDSON's wrists.

61.    Also, as shown above, plaintiff AURORA was also ordered at gunpoint to get on the ground in a prone position by defendants DOE 3 and/or DOE 4 and/or DOE 5, where she remained face down for approximately a minute before being allowed to stand up.

62.    However she was still detained at gunpoint for several minutes thereafter by defendants DOE 4 and/or DOE 5, as she watched her husband and sons, plaintiffs JUDSON, ENRIQUE, JACOB and JORDIN being ordered to the ground at gunpoint by the other DOE Whittier Police Department police officers, and witnessed her husband and sons being handcuffed without any moral or legal justification or any reasonable suspicion of criminality afoot by any of the plaintiffs.

63.    Plaintiff AURORA was detained for approximately another hour by defendants DOE 4 and/or DOE 5 standing next to her without any legal or moral

justification, and in the absence of any reasonable suspicion of criminality afoot by her.

64.    Also, as shown above, plaintiff ENRIQUE was also ordered to the ground at gunpoint by defendant DOES 1 through 7, inclusive, and was handcuffed by said defendants, before being placed in the back seat of a Whittier Police Department patrol car for approximately 30 minutes before being released; also in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification.

65.    Moreover, the handcuffs were cinched down excessively tightly in a showing of great and excessive force, causing pain and injuries to plaintiff ENRIQUE's wrists.

66.    Also, as shown above, plaintiff JACOB was also ordered to the ground at gunpoint by defendant DOES 1 through 7, inclusive, and was handcuffed by said defendants, before being placed in the back of a Whittier Police Department patrol car for approximately 15 minutes before being released, also in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification.

67.    The handcuffs were also cinched down excessively tight in a showing of great and excessive force, causing pain and injuries to plaintiff JACOB's wrists.

68.    Also, as shown above, plaintiff JORDIN was also ordered to the ground at gunpoint by defendant DOES 1 through 7, inclusive, and was handcuffed by said defendants, also in the absence of any suspicion of a crime or criminality afoot by him, and without any legal or moral justification, before being placed in the back of a Whittier Police Department patrol car for approximately 45 minutes to an hour before he started feeling an elevated heart rate due to a preexisting heart condition and pain from a shoulder sprain and requested medical attention.

69.    The handcuffs were also cinched down excessively tightly, in a

showing of great and excessive force, causing pain and injuries to plaintiff JORDIN's wrists and spraining his shoulder.

70.    Also, as shown above, thereafter, plaintiff JORDIN, still in police custody, was handcuffed (both left and rights wrists) to a gurney in the back of an ambulance, and was transported to the Emergency Department at Presbyterian Intercommunity Hospital in Whittier, California, where he was denied admission to said hospital.

71.    Thereafter, plaintiff JORDIN was transported by ambulance to the Emergency Department at Whittier Hospital Medical Center in Whittier, California, where he remained in police custody, handcuffed to a gurney for another approximately 30-45 minutes, before being sat in a chair with his hands handcuffed behind him, in agonizing pain and suffering for approximately five and half to six hours.

72.    During the course of his admission to the Emergency Room at Whittier Hospital Medical Center, defendant DOE 5, a female Whittier Police Department police officer, refused medical staff's requests to remove the handcuffs from plaintiff JORDIN so that his shoulder could be x-rayed.

73.    This by DOE 5 to permit the hospital staff to take the handcuffs off of plaintiff JORDIN so he could be X-rayed with less agonizing pain and suffering than he was already suffering.

74.    Also as shown above, defendants DOES 1 through 7, inclusive's threatened use of deadly force at plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN (i.e. pointing their guns at the plaintiff), the ordering of plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN to the ground at gunpoint, the throwing of plaintiff JUDSON to the ground by two Whittier Police Department police officers, defendants DOE 2 and DOE 3, with great and excessive force, injuring both of his knees, both of his shoulders, and his neck and back, the injuring of plaintiff JORDIN sending him to the hospital with a sprained

shoulder, the cinching down the handcuffs excessively tight on plaintiffs JUDSON, ENRIQUE, JACOB and JORDIN in an unreasonable showing of excessive force, causing pain and injuries to plaintiff JUDSON's, ENRIQUE's, JACOB's and JORDIN's wrists, the keeping of JORDIN handcuffed to the gurney and keeping him handcuffed for approximately seven hours, and those other examples of the battering of plaintiffs shown above, constituted a violation of plaintiffs JUDSON's, AURORA's, ENRIQUE's, JACOB's and JORDIN's rights under the Fourth Amendment to the United States Constitution to be free from the use of unlawful and unreasonable and excessive force upon their persons.

75.     Also as shown above, the actions of defendants DOES 1 through 7, inclusive, as complained above herein, constituted a violation of plaintiffs JUDSON's, AURORA's, ENRIQUE's, JACOB's and JORDIN's rights under the Fourth Amendment to the United States Constitution to be free from the use of unlawful and unreasonable and excessive force upon their persons.

76.     As a direct and proximate result of the actions of defendants DOES 1 through 7, inclusive's unlawful and unreasonable use of excessive force upon plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

77.     The actions by said defendants DOES 1 through 7, inclusive, were committed maliciously, oppressively and in reckless disregard of said plaintiffs' constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants, and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff against each defendant.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation Of Fourth Amendment Rights
### Unreasonable/Unlawful Entry Into & Search & Seizure of Private Residence
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN
### against defendants DOES 1 through 7, inclusive)

78.    Plaintiffs hereby reallege and re-incorporate by reference the allegations set forth in paragraphs 1 through 77, inclusive, above, as if set forth in full herein.

79.    As shown above, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN WARD were residents of a single-family home at 8150 College Boulevard in Whittier, California.

80.    Moreover, as shown above, approximately 30-45 minutes after the shooting of the Ball family dog KHALEESI, approximately four Whittier Police Department police officers, DOE 3 and/or DOE 4 and/or DOE 6 and/or DOE 7 told plaintiff AURORA they were going into the Ball family home, all in the absence of consent or a warrant or an exigency/emergency.

81.    Plaintiff AURORA asked said police officers "Why" they were going into the Ball family home, and she was then told by those defendant DOE police officers that they had to make sure that everybody was out of the house.

82.    After the officers had conducted a very thorough unlawful warrantless search of the entirety of the family home—including looking in every dresser, cupboard, closet, essentially every square inch of the house—plaintiff AURORA and the other plaintiff at the scene were then allowed back into their home.

83.    Also as shown above, defendants DOES 1 through 7, inclusive, had neither consent nor a warrant, nor did any exigency/emergency situation exist to justify/lawfully permit said DOE defendants to have entered and/or to have searched plaintiffs' home.

84.    Moreover, also as shown above, defendants DOES 1 through 7, inclusive, unlawfully refused to allow plaintiffs to enter their home.

85.    Accordingly, this unlawful entry into, search and seizure of and exclusion of plaintiffs from their home by defendants DOES 1 through 7, inclusive, constituted a violation of plaintiffs JUDSON's, AURORA's, ENRIQUE's, JACOB's and JORDIN 's rights under the Fourth Amendment to the United States Constitution.

86.    As a direct and proximate result of the actions of defendants DOES 1 through 7, inclusive's unlawful entry into, search and seizure of and exclusion of plaintiffs from their home by defendants DOES 1 through 7, inclusive plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering, 3) incurred medical and psychological costs, bills and expenses and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

87.    The actions by said defendants DOES 1 through 7, inclusive, were committed maliciously, oppressively and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants, and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff against each defendant.

## FOURTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
### Unlawful/Unreasonable Seizure of Property/Excessive Force
**(By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendant DOE 1)**

88.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 87, inclusive, above, as if set forth in full herein.

89.    As set forth above, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN owned and possessed an American Doberman Pinscher named "KHALEESI"; their family dog.

90.    Also as set forth above, on January 16, 2024, at approximately 2:45 p.m. defendant DOE 1 walked down plaintiff's street toward plaintiffs' home[21].

91.    Also as set forth above, as defendant DOE 1 walked down plaintiffs' street toward plaintiff's home KHALEESI exited through the gate in front of plaintiffs' home and began approaching defendant DOE 1.

92.    As KHALEESI approached defendant DOE 1 he shot KHALEESI with his pistol Whittier Police Department service pistol.

93.    At the time that defendant DOE 1 shot KHALEESI, KHALEESI did not present a threat to defendant DOE 1 of inflicting an imminent violent injury upon defendant DOE 1, and no reasonably well-trained officer would have believed that KHALEESI presented a threat of inflicting an imminent violent injury upon him/her/them.

94.    In response to hearing those gunshots[22], plaintiff JUDSON ran towards his driveway from his side yard and he saw a man in a jumpsuit[23], defendant DOE 1 holding a handgun, and the Ball family dog KHALEESI[24] laying on the ground.

95.    Plaintiff JUDSON then knelt down next to KHALEESI, who was bleeding and had a large gunshot wound to her chest.

---

[21] Defendant DOE 1 was not walking to plaintiffs' home, but to another home on the same street at plaintiffs' home during the January 16, 2024 incident complained of in this action.
[22] Defendant DOE 1 shooting KHALEESI.
[23] Plaintiff JUDSON was unable to determine whether that man was a Whittier Police Department police officer because he was not in a regular type police officer uniform. It was only until DOE 1 radioed for backup police officers that JUDSON had a suspicion that the man, DOE 1, was a Whittier Police Department police officer. Initially, plaintiff JUDSON thought he was a gang member.
[24] An American Doberman Pinscher named "Khaleesi."

96.    At that point in time, plaintiff JUDSON believed that KHALEESI was going to die as she was bleeding out badly.

97.    Plaintiff AURORA was exiting her residence[25] from a side door when she heard the gunshots[26] and actually saw defendant DOE 1 discharge the last round from his pistol at KHALEESI, witnessing her dog being shot.

98.    Plaintiff AURORA then went to her husband, JUDSON, who was by then kneeling down next to KHALEESI.

99.    By this point in time plaintiffs ENRIQUE, JACOB and JORDIN also came out of the Ball family home[27] and verbally protested defendant DOE 1's shooting of KHALEESI.

100.    Within the next few minutes, approximately fifteen Whittier Police Department police officers, including defendant DOES 2 through 6, inclusive[28], arrived at the scene at Ball family home, and ordered plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN at gunpoint with assault rifles, shot guns and handguns, to get on the ground, without any legal or moral justification or any reasonable suspicion of criminality afoot by those plaintiffs.

101.    During this time, plaintiffs all witnessed KHALEESI die and they were all severely traumatized and saddened from watching their family dog die.

102.    Again, at the time that defendant DOE 1 shot KHALEESI, KHALEESI did not present a threat to defendant DOE 1 of inflicting an imminent violent injury upon defendant DOE 1.

---

[25] The Ball family home, the single family residence at 8150 College Boulevard in Whittier, California.
[26] Defendant DOE 1 shooting KHALEESI.
[27] The Ball family home, the single family residence at 8150 College Boulevard in Whittier, California.
[28] Although there were approximately 15 Whittier Police Department police officers who arrived the scene at plaintiff's home, the Local Rules of the United States District Court for the Central District of California only permits a Complaint for Damages to show a maximum of 10 DOE defendants in the case caption.

103.   Accordingly, defendant DOE 1 seized plaintiffs' family dog, KHALEESI, in an unreasonable manner, with excessive force, in violation of plaintiffs' rights under the Fourth Amendment to the United States Constitution.

104.   As a direct and proximate result of the actions of defendants DOES 1 through 7, inclusive's unlawful entry into, search and seizure of and exclusion of plaintiffs from their home by defendants DOES 1 through 7, inclusive plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering, 3) incurred medical and psychological costs, bills and expenses and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

105.   The actions by said defendants DOES 1 through 7, inclusive, were committed maliciously, oppressively and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants, and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff against each defendant.

### FIFTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation Of First Amendment Right To
### Freedom Of Speech/Right to Petition Government for Redress of Grievances
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants Against Defendants DOES 1 through 7, inclusive)

106.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 105, inclusive, above, as if set forth in full herein.

107.   As shown above, plaintiffs ENRIQUE, JACOB and JORDIN came out of their house and verbally condemned defendant DOE 1 for shooting their dog.

108.   Also, as shown above, when plaintiffs JUDSON, AURORA,

ENRIQUE, JACOB and JORDIN were ordered to the ground at gunpoint, they verbally protested to defendants DOES 1 through 7, inclusive.

109.   Moreover, defendants DOES 1 through 7, inclusive, had no lawful reason to have seized plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN.

110.   Furthermore, throughout the course of the subject incident, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN verbally protested the shooting and killing of the Ball family's dog KHALEESI by defendant DOE 1, as well as their being ordered to the ground at gunpoint, their being subjected to excessive force and injuries being perpetrated upon them by excessively tightly handcuffing them, their being battered, assaulted, and actually and/or essentially arrested[29], and being subjected to a warrantless and suspicionless search of their home and their being excluded from their home, without any legal or moral justification whatsoever, and the unlawful warrantless search of the family home, all by defendants DOES 1 through 7, inclusive.

111.   In response to and in retaliation for plaintiffs' verbal protests of said conduct by defendants DOES 1 through 7, inclusive, complained of in paragraph 109 above and otherwise above-described, especially defendant DOE 1's shooting of the Ball family's dog KHALEESI, defendants DOES 1 through 7, inclusive, ordered plaintiffs to the ground at gunpoint, subjected them to excessive force and associated physical injuries by handcuffing them excessively tight, battering them,

_____

[29] Such as plaintiff JUDSON being in police custody for approximately 7 hours and even handcuffed to a gurney for that prolonged period of time, and such as by seizing the plaintiffs at gunpoint in the absence of and facts that would have caused a reasonably well-trained police officer to entertain a reasonable suspicion that any of the plaintiffs had committed a crime.

assaulting them, actually and/or essentially arresting them[30], searching plaintiffs' home and excluding them from the same.

112.   Moreover, a substantial or motivating factor in the decisions of defendants DOES 1 through 7, inclusive, to take the actions against the plaintiffs complained of in paragraphs 109, 110 and as otherwise complained of above, were plaintiffs' verbal protests of those actions by defendants DOES 1 through 7, inclusive.

113.   Accordingly, the actions by defendants DOES 1 through 7, inclusive, were done in violation of plaintiffs JUDSON's, AURORA's, ENRIQUE's, JACOB's and JORDIN's rights under the First Amendment to the United States Constitution to freedom of speech and to petition the government for redress of grievances.

114.   As a direct and proximate result of the actions of defendants DOES 1 through 7, inclusive's against plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

115.   The actions by said defendants DOES 1 through 7, inclusive, were committed maliciously, oppressively and in reckless disregard of plaintiff's

---

[30] Such as plaintiff JUDSON being in police custody for approximately 7 hours and even handcuffed to a gurney for that prolonged period of time, and such as by seizing the plaintiffs at gunpoint in the absence of and facts that would have caused a reasonably well-trained police officer to entertain a reasonable suspicion that any of the plaintiffs had committed a crime.

constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants, and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff against each defendant.

## SIXTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
## MUNICIPAL LIABILITY – MONELL LIABILITY[31]
## Failure to Properly Train
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants Against Defendants City of Whittier and DOES 8 through 10, inclusive)

116.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 115, inclusive, above, as if set forth in full herein.

117.    As shown above, defendants DOES 8 through 10, inclusive, are the Whittier City Manager and/or Whittier Police Department Supervisory and Policy Making Officials, such as the Chief of Police and/or Assistant Chiefs and/or Deputy Chiefs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory and/or Policy Making officials/personnel and/or other policy making and/or final policy making officials for the Whittier Police Department[32], employed by the City of Whittier[33], who are in some substantial way liable to plaintiffs and responsible for the tortious actions and constitutional violations perpetrated against the plaintiffs, above-described, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiffs in this action, such as by making and/or contributing to the making of actual written policies of the Whittier Police Department[34] and/or by creating or

---

[31] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).
[32] And/or with some other police agency.
[33] And/or with some other public entity.
[34] And/or with some other police agency.

causing to be longstanding customs and practices of the Whittier Police Department[35], by failing to properly train Whittier Police Department[36] police officers: (1) to only shoot at dogs when a reasonably well-trained police officer would reasonably believe that such dogs pose an imminent and immediate threat of seriously injuring them; (2) to only threaten civilians with the use of deadly force upon them, such as by pointing high-powered assault rifles, shotguns and pistols at unarmed civilians and ordering them to proned out on the ground, when they have probable cause to believe that the person has committed a serious and dangerous felony and when a reasonably well-trained police officer would believe that the person is presently dangerous and poses a serious threat of injury to the officer; (3) to not handcuff persons who they do not have at least a reasonable suspicion of criminality afoot for; (4) to not enter into and to search private homes in the absence of a warrant, consent or any emergency situation/exigency, and (5) to not retaliate against civilians for exercising their First Amendment rights to freedom of speech and to petition the government for redress of grievances, such as by verbally protesting police actions and orders.

118.   This failure of the Whittier Police Department to so properly train its police officers and supervisors were a proximate cause of the federal constitutional violations complained of above in plaintiffs' first five Causes of Action brought under 42 U.S.C. § 1983 and otherwise complained of by the plaintiffs in this action[37].

119.   As a direct and proximate result of the actions of defendants CITY and DOES 8 through 10, inclusive's actions in causing the violations complained of above of plaintiffs' federal constitutional rights, plaintiffs JUDSON,

---

[35] And/or with some other police agency.
[36] And/or with some other police agency.
[37] That is the causes of action brought under California state law.

COMPLAINT FOR DAMAGES
27

AURORA, ENRIQUE, JACOB and JORDIN were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

120.   The actions by said defendants DOES 8 through 10, inclusive, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants, and each of them, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff against each such defendant.

## SEVENTH CAUSE OF ACTION
### Violation of Cal. Civil Code § 52.1
### Under California State Law
**(By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOES 1 through 7, inclusive)**

121.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 120, inclusive, above, as if set forth in full herein.

122.   As shown above, defendants DOES 1 through 6, inclusive, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and coercion, the exercise or enjoyment by plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN of the rights secured by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of Cal. Civil Code §52.1, to wit: in response to and in retaliation for plaintiffs' verbal protests of said conduct by defendants DOES 1 through 7, inclusive, complained of in paragraphs 109 and 110 above and otherwise above-described, especially defendant DOE 1's shooting of the Ball family's dog KHALEESI, defendants DOES 1 through 7, inclusive, ordered plaintiffs to the ground at gunpoint, subjected them to excessive force and

associated physical injuries by handcuffing them excessively tight, battering them, assaulting them, actually and/or essentially arresting them[38], searching plaintiffs' home and excluding them from the same.

123.    Accordingly, defendants DOES 1 through 7, inclusive, are liable to plaintiffs for said violations of his constitutional rights, pursuant to Cal. Civil Code § 52.1 and Cal. Gov't Code §§ 815.2(a) and 820.

124.    As a direct and proximate result of the actions of defendants DOES 1 through 10, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

125.    The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff.

126.    In addition, as a result of the actions of said defendants in violation of the plaintiff's rights under Cal. Civil Code § 52.1, the plaintiffs are entitled to an award of treble compensatory damages against all defendants, and each of them in this action.

## EIGHTH CAUSE OF ACTION
### False Arrest / False Imprisonment

---

[38] Such as plaintiff JORDIN being in police custody for approximately 7 hours and even handcuffed to a gurney for that prolonged period of time, and such as by seizing the plaintiffs at gunpoint in the absence of and facts that would have caused a reasonably well-trained police officer to entertain a reasonable suspicion that any of the plaintiffs had committed a crime.

**Under California State Law**
**(By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOES 1 through 7, inclusive)**

127.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 126, inclusive, above, as if set forth in full herein.

128.   As complained of above, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were unlawfully seized and arrested by defendants DOES 1 through 7, inclusive, on January 16, 2024.

129.   Also as complained of above, defendants DOES 1 through 7, inclusive, had neither a warrant nor probable cause to believe that plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN had committed a crime, nor reasonable suspicion of criminality afoot about the plaintiffs.

130.   Also as complained of above, defendants DOES 1 through 7, inclusive, detained and at least functionally arrested plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN at gunpoint and ordered them to get on the ground, again, in the absence of any facts that would have indicated to a reasonably well-trained police officer, or to have caused them to suspect, that any of said plaintiffs had committed a crime.

131.   Also as complained of above, defendants DOES 1 through 7, inclusive, detained and at least functionally arrested the plaintiffs for those various period of time shown above, including plaintiff JORDIN's continued status in police custody for approximately 7 hours.

132.   Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were actually harmed by the conduct of defendants DOES 1 through 7, inclusive, as described above.

133.   The conduct of defendants DOES 1 through 7, inclusive, was substantial factor in causing the plaintiffs' harm.

134.   Defendants DOES 1 through 7, inclusive, are liable to plaintiffs for their false arrests/false imprisonments pursuant to Cal. Gov't Code §§ 815.2(a),

820 and 820.4.

135.    As a direct and proximate result of the actions of defendants DOES 1 through 7, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

136.    The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff.

## NINTH CAUSE OF ACTION
**Battery**
**Under California State Law**
**(By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOES 1 through 7, inclusive)**

137.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 136, inclusive, above, as if set forth in full herein.

138.    The actions committed by defendants DOES 1 through 7, inclusive, above-described, constituted unjustified non-consensual and offensive touching of the plaintiffs and the use of unlawful force and violence upon plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN, and constituted a battery of them by said defendants under California state law.

139.    Defendants CITY and DOES 1 through 7, inclusive, and each of them, are liable to plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN or said batteries of them, pursuant to Cal. Gov't Code §§ 815.2(a) and 820, and otherwise pursuant to the common-law.

140.   As a direct and proximate result of the actions of defendants DOES 1 through 7, inclusive, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

141.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff against each defendant.

## TENTH CAUSE OF ACTION
### Assault
### Under California State Law
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOES 1 through 7, inclusive)

142.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 141, inclusive, above, as if set forth in full herein.

143.   The actions committed by defendants DOES 1 through 7, inclusive, above-described, constituted an assault of plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN under California state law, as said plaintiffs were unlawfully placed in reasonable fear of receiving an imminent violent injury by said defendants as described above.

144.   Defendants CITY and DOES 1 through 7, inclusive, and each of them, are liable to under California state law for said assaults of plaintiffs pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common law.

145.   As a direct and proximate result of the actions of defendants DOES 1

through 7, inclusive, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

146.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff against each defendant.

## ELEVENTH CAUSE OF ACTION
### Conversion/Trespass to Chattels
### Under California State Law
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOE 1)

147.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 146, inclusive, above, as if set forth in full herein.

148.   Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN owned and possessed an American Doberman Pinscher named KHALEESI identified hereinabove and at all times mentioned herein.

149.   Defendant DOE 1 intentionally and substantially interfered with plaintiffs JUDSON's, AURORA's, ENRIQUE's, JACOB's and JORDIN's use of their property by shooting and killing plaintiffs' dog.

150.   Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN did not consent to said defendant shooting and killing their dog.

151.   Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were harmed by the wrongful shooting and killing their dog by defendant DOE 1.

152.  Said defendant's conduct was a substantial factor in causing plaintiffs'

harm.

153.   Defendants CITY and DOE 1 are liable to plaintiffs under California state law for said conversion/trespass to chattels of plaintiff's property pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common law.

154.   As a direct and proximate result of the actions of defendants DOE 1, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

155.   The actions by said defendant was committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff.

## TWELFTH CAUSE OF ACTION
### Intentional Infliction Of Emotional Distress
### Under California State Law
**(By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOES 1 through 7, inclusive)**

156.   Plaintiffs hereby reallege and re-incorporate by reference the allegations set forth in paragraphs 1 through 155, inclusive, above, as if set forth in full herein.

157.   Defendants DOES 1 through 7, inclusive, and each of them, knew and/or should have known that plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were susceptible to suffering severe emotional distress from the actions taken and committed against plaintiffs as complained of above and herein.

158.   Moreover, the conduct of defendants DOES 1 through 7, inclusive, for all of their actions complained of herein, were outrageous and not the type of conduct condoned in a civilized society.

159.   Defendants CITY and DOES 1 through 7, inclusive, and each of them, are liable to plaintiffs under California state law for said intentional infliction of emotional distress pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common law.

160.   As a direct and proximate result of the actions of defendants DOES 1 inclusive, they were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

161.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff.

## THIRTEENTH CAUSE OF ACTION
### Negligent Infliction Of Emotional Distress (*Dillon v. Legg* Claim) Under California State Law
### (By Plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN against defendants CITY and DOES 1 through 7, inclusive)

162.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 161, inclusive, above, as if set forth in full herein.

163.   As shown above, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN each had a sensory awareness of the shooting and killing of their dog, having guns pointed at them and at their siblings, parents and children being ordered to the ground, being handcuffed and falsely arrested. Said plaintiffs

specifically saw each other plaintiff being subjected to their false arrest and to the use of unreasonable force upon them, including being threatened with the use of deadly force upon them by defendants DOES 1 through 7, inclusive, and suffered severe emotional distress therefrom.

164.   As shown above, as a result of the plaintiff being aware of mistreatment by defendants DOES 1 through 7, inclusive, above-referenced, said plaintiffs, and each of them, suffered severe emotional distress therefrom.

165.   Plaintiffs also witnessed their family members being arrested at gunpoint by said defendants, as shown above, during the January 16, 2024 incident complained of above and below, being subjected to unreasonable force by defendants DOES 1 through 7, inclusive, and suffered severe emotional distress therefrom.

166.   Defendants CITY and DOES 1 through 7, inclusive, and each of them, are liable to plaintiffs under California state law for said negligence infliction of emotional distress pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common law.

167.   As a direct and proximate result of the actions of defendants DOES 1 through 10, plaintiffs JUDSON, AURORA, ENRIQUE, JACOB and JORDIN were: 1) substantially physically, mentally and emotionally injured, 2) suffered great physical, mental and emotional injury, distress, pain and suffering; 3) incurred medical and psychological costs, bills and expenses, 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00 for each plaintiff.

168.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff.

**WHEREFORE**, plaintiffs pray for judgment as follows:

a)      For a judgment in favor of all plaintiffs against all defendants for compensatory damages in an amount in excess of $10,000,000.00 for each plaintiff against each defendant;

b)      For a judgment against all defendants, save defendant CITY for punitive damages in an amount in excess of $10,000,000.00 for each plaintiff against each defendant;

c)      For treble compensatory damages;

d)      For an award of reasonable attorney's fees and costs;

e)      For a trial by jury; and

7)      For such other and further relief as this honorable court deems just and equitable.

_____
JERRY L. STEERING, ATTORNEY FOR
PLAINTIFFS JUDSON RICHARD BALL, AURORA
IBAY BALL, JUDSON ENRIQUE BALL, JACOB
ALESSANDRO BALL and JORDIN HOWARD BALL

COMPLAINT FOR DAMAGES
37